UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOHN TROSCLAIR AND                  CIVIL ACTION NO. 6:19-cv-00318
TONIA TROSCLAIR

VERSUS                              JUDGE DOUGHTY

INTERNATIONAL LABORATORIES,         MAGISTRATE JUDGE HANNA
INC., ET AL.

## REPORT AND RECOMMENDATION

Pending before this Court is the motion to dismiss for lack of personal jurisdiction, brought under Fed. R. Civ. P. 12(b)(2), which was filed by the defendant, International Laboratories, LLC ("INL"). (Rec. Doc. 49). The motion is opposed. The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion should be denied.

## Background

This lawsuit originated in the 15th Judicial District Court, Lafayette Parish, and was removed by defendant Wal-Mart Louisiana, LLC on the basis of diversity jurisdiction. The plaintiffs' petition alleged that, on about December 19, 2017, plaintiff John Trosclair went to the Wal-Mart store in Carencro, Louisiana to refill

his Clopidogrel prescription.  Clopidogrel, also known as Plavix, is a blood thinner used to prevent heart attacks and strokes.  What Mr. Trosclair actually received, however, allegedly was not Clopidogrel but was Simvastatin, a totally different drug.

On January 9, 2018, defendant INL issued a voluntary recall through the federal Food & Drug Administration because it had erroneously filled bottles labeled as Clopidogrel with Simvastatin.[1]  In a letter dated January 29, 2018, Wal-Mart allegedly notified Mr. Trosclair of the recall.

The plaintiffs alleged that Mr. Trosclair took the Simvastatin that was labelled as Clopidogrel and suffered adverse effects, including amputation of a toe and five cardiac bypass procedures.  His wife, plaintiff Tonia Trosclair, alleged that she sustained a loss of consortium due to her husband's injuries.  The plaintiffs asserted negligence claims against Wal-Mart and INL.  They claimed that INL failed to properly label the medication, failed to use appropriate quality control measures, and failed to timely notify them of the recall.  They claimed that Wal-Mart failed to dispense the correct medication, failed to use appropriate quality control measures, and failed to timely notify them of the recall.

INL responded to the plaintiffs' petition with a motion to dismiss (Rec. Doc. 14), arguing among other things that the court lacks personal jurisdiction over it.

---

[1]      Rec. Doc. 52-4.

Following briefing and oral argument of that motion, this Court deferred ruling pending jurisdictional discovery.   (Rec. Doc. 31).   The plaintiffs propounded interrogatories, requests for the production of documents, and requests for admissions on INL, which were answered.[2]  INL then reurged its motion to dismiss but only with regard to the issue of personal jurisdiction.  (Rec. Doc. 49).  That motion is now before this Court and ready for resolution.

## Law and Analysis

### Personal jurisdiction.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.  Whether personal jurisdiction can be exercised over a nonresident defendant is a question of law.[3] "Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication."[4]  When, as in this case, a nonresident defendant challenges personal jurisdiction, the party invoking the power of the court bears the burden of proving that jurisdiction exists.[5]  When the

---

[2]     International's responses to the plaintiffs' jurisdictional discovery are in the record at Rec. Doc. 49-4

[3]     *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

[4]     *Guidry v. U.S. Tobacco Co*., 188 F.3d 619, 623, n. 2 (5th Cir. 1999).

[5]     *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)); *Bullion v. Gillespie*, 895 F.2d at 216-17.

defendant's motion is decided without an evidentiary hearing, the opposing party is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy the burden.[6]  A *prima facie* showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record.[7] The court must accept as true the nonmoving party's uncontroverted allegations and resolve any factual conflicts in its favor.[8]  But the court is not required to credit conclusory allegations, even if left uncontroverted.[9]  If the court holds an evidentiary hearing, however, the plaintiff "must establish jurisdiction by a preponderance of the admissible evidence."[10]  In this case, no evidentiary hearing was held.

In determining whether personal jurisdiction is proper, a district court sitting in diversity, as in this case, applies the law of the forum state.[11]  Under the Louisiana

---

[6]    *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000).

[7]    *Guidry v. U.S. Tobacco Co.*, 188 F.3d at 625.

[8]    *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d at 380; *Stripling v. Jordan Production Co.*, 234 F.3d 863, 869 (5th Cir. 2000); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d at 215; *Guidry v. U.S. Tobacco Co.*, 188 F.3d at 625.

[9]    *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n. 16 (5th Cir. 1996).

[10]    *In re Chinese Manufactured Drywall Prods. Liab. Lit.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008)).

[11]    *Companion Property and Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

Long-Arm Statute, a court may exercise personal jurisdiction over any nonresident so long as the basis for such jurisdiction is consistent with the United States Constitution.[12]  Consequently, the limits of the Louisiana Long-Arm Statue are coextensive with the limits of constitutional due process.[13]  Therefore, this Court need only determine whether subjecting the defendant to suit in Louisiana would be consistent with the Due Process Clause of the Fourteenth Amendment.[14]  The exercise of personal jurisdiction over a nonresident defendant satisfies due process when:  (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with that state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.[15]  In other words, due process is satisfied when the defendant's connection with Louisiana is such that the defendant should reasonably anticipate being haled into court in Louisiana.[16]

---

[12]    La. R.S. 13:3201(B).

[13]    *Alonso v. Line*, No. 02-2644 (La. 05/20/03), 846 So.2d 745, 750, cert. denied, 540 U.S. 967 (2003); *Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1192 (La. 1987).  Texas's long-arm statute is also coextensive with the federal constitutional limits of due process. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir.), cert. denied, 555 U.S. 816 (2008). Therefore, Fifth Circuit cases regarding personal jurisdiction under that statute are equally applicable.

[14]    *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).  See, also, e.g., *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d at 242-43.

[15]    *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d at 813; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

[16]    *Latshaw v. Johnston*, 167 F.3d at 211.

There are two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction. While INL contended that its contacts with Louisiana give rise to neither, the plaintiffs and Wal-Mart argued that the court has specific personal jurisdiction over INL.

**General Personal Jurisdiction**

General personal jurisdiction exists when a defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there.[17]  Corporations are considered at home in the states in which they were incorporated and have their principal places of business.[18]  Limited liability companies such as INL are also subject to the "at home" test.[19]

INL submitted the affidavit of Sutka Veselinovic, its associate director of regulatory compliance, in which she stated that INL was organized under the laws of the State of Florida and has its principal place of business in Florida.[20]  According to Ms. Veselinovic, INL does not operate any laboratories, facilities, or distribution centers in Louisiana, pays no taxes to the State of Louisiana, has no employees or

---

[17]    *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

[18]    *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d at 432; *Daimler AG v. Bauman*, 571 U.S. at 133-139.

[19]    See, e.g., *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 227-38 (5th Cir. 2020).

[20]    Rec. Doc. 14-2 at 3.

6

independent contractors in Louisiana, does not transact business in Louisiana, and has no registered agent for service of process in Louisiana.[21]  All of these facts lead to the conclusion that INL is not so "at home" in Louisiana as to support a finding of general jurisdiction.

## Specific Personal Jurisdiction

Specific personal jurisdiction exists when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arose out of or related to those activities.[22]  Thus, specific personal jurisdiction requires a claim-specific inquiry.[23]  The suit must arise out of or relate to the defendant's contacts with the forum.[24]  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[25]

---

[21]    Rec. Doc. 14-2 at 3.

[22]    *Walk Haydel & Associates, Inc. v. Coastal Power Production Co*., 517 F.3d at 243 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d at 868).

[23]    *Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

[24]    *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, ___ U.S. ___, 137 S.Ct. 1773, 1780 (2017).

[25]    *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. at 1773 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The inquiry used to determine whether specific jurisdiction exists has three steps. First, the court must determine whether the defendant has sufficient minimum contacts with the forum state or, in other words, whether the defendant has purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there.[26] "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'"[27] in the forum state. Random, fortuitous, or attenuated contacts are insufficient,[28] but a single, substantial act directed toward the forum can support specific jurisdiction.[29]

Second, the court must determine whether the plaintiff's cause of action arose out of or resulted from the defendant's contacts with the forum.[30] At this step, the proper focus is on the "relationship among the defendant, the forum, and the

---

[26]    *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citing *Nuovo Pignone, Spa v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)).

[27]    *McFadin v. Gerber*, 587 F.3d at 759 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d at 470).

[28]    *Carmona v. Leo Ship Management, Incorporated*, 924 F.3d 190, 194 (5th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[29]    *ASARCO, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475 n. 18.

[30]    *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d at 271 (citing *Nuovo Pignone, Spa v. STORMAN ASIA M/V*, 310 F.3d at 378).

litigation."[31]  This is a claim-specific inquiry, as "the Due Process Clause prohibits the exercise of [specific personal] jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."[32]

Finally, if the nonmoving party satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that the forum state's exercise of jurisdiction would be unfair or unreasonable.[33]  In this inquiry, a court analyzes five factors: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[34]  "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown."[35]

The Fifth Circuit has recognized that the federal circuit courts are divided with regard to the theory that a defendant is subject to personal jurisdiction in any state

---

[31]    *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. at 204)).

[32]    *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d at 275.

[33]    *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d at 271.

[34]    *Luv N' care, Ltd. v. Insta-Mix, Inc*., 438 F.3d at 473.

[35]    *Johnston v. Multidata Sys. Int'l Corp*., 523 F.3d 602, 615 (5th Cir. 2008) (quoting *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

in which its product arrives after being placed into the stream of commerce.[36]  The Fifth Circuit adheres to the more expansive view, under which a plaintiff need only show that the defendant delivered the product that injured him into the stream of commerce with the expectation that it would be used by consumers in the forum state, in order to establish specific personal jurisdiction.[37]

INL claims that it does not do any business in Louisiana; did not manufacture the medication at issue; and does not supply, distribute, or sell pharmaceutical medication of any kind.  It claims, instead, that it simply is a repackager.  Therefore, it claims that it did not place a product into the stream of commerce, contending that it receives an unlabeled medication from a third party (in this case Wal-Mart), repackages and relabels it, and returns it to the third party (again Wal-Mart in this case), which then distributes the product, placing it into the stream of commerce. More specifically, Ms. Veselinovic stated, in her affidavit, that:  (1) the company does no packaging or labeling in Louisiana;[38] (2) the company delivers the repackaged product to Wal-Mart distribution centers but has no knowledge or

---

[36]   *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d 753, 778 (5th Cir. 2018).

[37]   *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation*, 888 F.3d at 778-79 (citing *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013)).

[38]   Rec. Doc. 14-2 at 3.

control over where the product goes after that;[39] and (3) the company has no

knowledge that any items within the recalled lot were distributed to, supplied to, or

sold in Louisiana.[40]

However, INL's packaging of the Clopidogrel in this case was undertaken in

accordance with its contractual arrangement with Wal-Mart. In 2014, INL and Wal-

Mart Stores, Inc. entered into a contract styled a "Turn-Key Supply Agreement."[41]

That contract states that INL will, pursuant to the terms and conditions of the parties'

agreement, use diligent and commercially reasonable efforts to meet Wal-Mart's

purchase orders for packaging "to be sold and distributed by Wal-Mart in the

Territory."[42] The contract defines the term "territory" as "all of the United States."[43]

In 2017, INL and Wal-Mart Stores, Inc. entered into a contract styled a "Sam's Club

General Merchandise Supplier Agreement,"[44] which similarly defined the term

"territory" to mean the United States, its territories, and possessions.[45] Therefore,

INL agreed that it would package products for Wal-Mart that would then be

---

[39]    Rec. Doc. 14-2 at 2.

[40]    Rec. Doc. 14-2 at 4.

[41]    Rec. Doc. 52-1.

[42]    Rec. Doc. 42-1 at 3.

[43]    Rec. Doc. 52-1 at 2.

[44]    Rec. Doc. 52-2.

[45]    Rec. Doc. 52-2 at 2.

distributed throughout the United States.  In the latter contract, INL also represented and warranted that "[t]he Merchandise has been labeled, advertised and invoiced in accordance with the requirements of all Laws, and the Merchandise, and its sale by Company anywhere within the Territory does not violate any Law."[46]   In its responses to the jurisdictional discovery, INL stated that the recalled Clopidogrel was shipped to certain of Wal-Mart's distribution centers and also stated that the "shipments were conducted in accordance with the Turnkey and General Merchandise Agreements."[47]  Thus, by entering into these contracts, INL knew that when it delivered repackaged medication to a Wal-Mart distribution center, the medication would then be shipped to Wal-Mart retail locations in every state. Furthermore, in order to comply with the terms of the General Merchandise Agreement, INL had to be familiar with the laws of Louisiana relevant to the labeling, advertising, and invoicing of the merchandise subject to INL's contracts with Wal-Mart and also with the laws of Louisiana relevant to Wal-Mart's sale of the merchandise.  Consequently, INL must have expected that the medication would make its way to Louisiana and INL should not have been surprised by being haled into court in Louisiana.

---

[46]     Rec. Doc. 52-2 at 3.

[47]     Rec. Doc. 49-4 at 6.

This conclusion is buttressed by INL's communications after the mislabeling of the Clopidogrel occurred. INL's recall notice states that it was issuing a "Voluntary Nationwide Recall"[48] because the mislabeled "product was distributed nationwide and. . . distributed to retail stores in all US States."[49] INL was aware that the medication it had packaged for Wal-Mart had, in accordance with its contracts with Wal-Mart, made its way into all fifty states, including Louisiana.

Two other courts – the United States District Court for the Eastern District of Louisiana and the District Court for the First Judicial District of the State of Idaho in and for the County of Kootenai – have already been faced with this same issue. Lawsuits were filed in each of those courts arising out of the same incident in which INL mislabeled Simvastatin as Clopidogrel. In each of those suits, it was alleged that the mislabeled medication was sold by Wal-Mart pharmacies in the geographical areas served by those courts, and the incorrectly labeled medication allegedly caused injuries to persons living there. Both of the other courts found that they had specific personal jurisdiction over INL.

---

[48]    Rec. Doc. 52-4 at 1.

[49]    Rec. Doc. 52-4 at 2.

In *Brinston v. Walmart, Inc.*,[50] the United States District Court for the Eastern District of Louisiana found that the plaintiff had pleaded sufficient facts to establish a *prima facie* case of specific personal jurisdiction over INL.[51]

> Because INL sold the re-packaged medication to Walmart to distribute or resell, the Court finds that INL had an "expectation" that the medication "would be purchased by or used by consumers" anywhere a Walmart store may be found. . . . As a packing and labeling company, INL placed into the stream of commerce medication as it is sold. Considering there are several Walmart stores located in Louisiana, Louisiana is a foreseeable forum state. . . . The Court finds that exercising personal jurisdiction over INL does not offend traditional notions of fair play and substantial justice.[52]

In *LaMothe v. International Laboratories, LLC*,[53] the court found that "INL knew for a fact their product would end up in every state because. . . INL knew their product would be in every Walmart store in every state in the United States."[54] The Idaho court found this to be the case because INL's contract with Walmart required INL "to supply Walmart with all of the various types of drugs, in packages, that

---

[50]    *Brinston v. Walmart, Inc.*, t411 F.Supp.3d 381 (E.D. La. 2019).

[51]    *Brinston v. Walmart, Inc.*, 411 F.Supp.3d at 385.

[52]    *Brinston v. Walmart, Inc.*, 411 F.Supp.3d at 386.

[53]    *LaMothe v. International Laboratories, LLC*, No. CV28-19-8638 (District Court for the First Judicial District of the State of Idaho, County of Kootenai filed March 23, 2020). A copy of this decision was filed by plaintiffs as an exhibit to their opposition brief, and it can be found in the record at Rec. Doc. 51-9. Therefore, this Court will hereinafter cite the *LaMothe* decision by identifying the relevant page in the record of this lawsuit.

[54]    Rec. Doc. 51-9 at 31.

Walmart wanted, to be distributed 'nationwide' through all of Walmart's stores, which are located in every state."[55]  The Idaho court went on the find that

> INL placed their good (hundreds of thousands of pills) into the stream of commerce knowing for a fact that their product would wind up in Idaho, because they intended their product to wind up in Idaho, and they desired their product to wind up in Idaho.  Most importantly, their product did wind up in Idaho specifically in the hands of Mr. LaMothe, just as . . . INL intended, when Mr. LaMothe on three different occasions filled his prescription at Walmart.[56]

The Idaho court found that INL "clearly performed an act which purposefully availed themselves of the privilege of conducting business in Idaho by signing the Turn-Key Supply Agreement with Walmart and then fulfilling that agreement.  In signing that agreement, . . . INL knew their packaged drugs would be distributed to every state.  This Court need not go any further than this to find that. . . INL had minimal contacts with Idaho. . . ."[57]  The Idaho court went on to find "that fundamental fairness is met by allowing personal jurisdiction in Idaho courts."[58]

While this Court finds the reasoning in the *Brinston* and *LaMothe* decisions to be persuasive, INL argued that those decisions are incompatible with two United States Supreme Court rulings.  This Court disagrees, for the following reasons.

---

[55]    Rec. Doc. 51-9 at 31.

[56]    Rec. Doc. 51-9 at 31.

[57]    Rec. Doc. 51-9 at 32-33.

[58]    Rec. Doc. 51-9 at 42.

In its reply brief, INL stated that the United States Supreme Court held, in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, that "'stream of commerce' alone cannot serve as a basis for personal jurisdiction."[59] But the *Goodyear* decision does not illustrate that principle. In *Goodyear*, the court was called upon to decide whether foreign subsidiaries of a United States parent corporation were amenable to suit in state court on claims unrelated to activity of the subsidiaries in the forum state. As the court stated, "We granted certiorari to decide whether the *general* jurisdiction the North Carolina courts asserted over petitioners is consistent with the Due Process Clause of the Fourteenth Amendment."[60] No such issue was presented in this case since there is no contention by any party that the court has general jurisdiction over INL. Further, the *Goodyear* decision explained that the lower court had conflated the analysis for general personal jurisdiction and specific personal jurisdiction and had improperly applied stream of commerce principles in finding that general jurisdiction existed.[61] No such argument has been presented by any party in this case. Accordingly, the court's analysis of the issues resolved in *Goodyear* is irrelevant to the resolution of INL's motion.

---

[59]    Rec. Doc. 54 at 3.

[60]    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (emphasis added).

[61]    *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. at 927.

INL also argued that the Supreme Court's ruling in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*[62] "addressed the precise issue at hand."[63]  But there are significant distinctions between that case and this one.  In *Bristol-Myers*, claims were asserted in a California court by several plaintiffs against a drug manufacturer.  Some of the plaintiffs lived in California, but many of them did not.  The issue to be decided was whether the court had personal jurisdiction over the claims asserted by the out-of-state plaintiffs who did not allege that they were prescribed the medication by California doctors, purchased the medication in California, ingested the medication in California, were injured in California, or were treated for their injuries in California.  The court found that the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that state."[64]  The court also found no connection between the nonresident plaintiffs' claims and any activity or occurrence by the defendant in the forum state.  The court's holding was that California state courts lack specific jurisdiction to entertain the claims asserted by nonresident plaintiffs against a nonresident defendant because there was

---

[62]     *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,___ U.S. ___. 137 S.Ct. 1773, 1780 (2017).

[63]     Rec. Doc. 54 at 3.

[64]     *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. at 1782.

a lack of connection between the nonresident plaintiffs' claims and the defendant's activities in the forum.  No such issue was presented in this case.

On the other hand, this Court finds that the reasoning applied in the *Brinston* and *LaMothe* decisions should be followed in resolving INL's motion.  This Court first finds that INL's contracts with Wal-Mart created sufficient minimum contacts with Louisiana to conclude that INL purposefully directed its activities toward Louisiana.  Although Ms. Veselinovic stated in her affidavit that International "has no knowledge and is possession of no evidence that any items within the recalled lot. . . were distributed to, supplied to, and/or sold in the State of Louisiana,"[65] her statement is inconsistent with the recall notice that INL issued.  On January 9, 2017, INL issued a voluntary nationwide recall of one lot of 75 mg Clopidogrel tablets due to mislabeling.[66]  The recall notice makes it clear that INL was aware that the recalled lot of medication was distributed throughout the United States because the notice expressly stated that it was a "nationwide recall"[67] required because the "product was distributed nationwide and. . . distributed to retail stores in all US States."[68]  Furthermore, the contracts between INL and Wal-Mart state that the products INL

---

[65]     Rec. Doc. 52-8 at 4.

[66]     Rec. Doc. 52-4.

[67]     Rec. Doc. 52-4 at 1.

[68]     Rec. Doc. 52-4 at 2.

packaged for Wal-Mart would be distributed all over the country.  More particularly, discovery showed that the lot of Clopidogrel that was mislabeled, leading to this lawsuit, was shipped by INL to Wal-Mmart's distribution centers in Indiana, Georgia, Maryland, California, and Arkansas,[69] making it likely that the mislabeled medicine would be shipped to Louisiana.  It is alleged that the mislabeled lot did make its way to Louisiana, that it was purchased by the plaintiff in Louisiana, that the plaintiff ingested it in Louisiana, and that he sought medical treatment for his resulting injuries in Louisiana.  There is no evidence that INL took any steps at any time to limit the territory in which the products it packaged could be distributed or sold.  Instead, INL contractually bound itself to make its repackaging of the medication comply with the laws of all fifty states, including Louisiana.  Therefore, INL expected that its products would be sold in all fifty states, including Louisiana.

Second, this Court finds that this lawsuit arose out of or resulted from INL's contacts with Louisiana.  Because INL contracted with Wal-Mart to package products that were distributed to Louisiana in accordance with Louisiana law, a mislabeled bottle of medication allegedly made its way from INL's packaging facility to the Wal-Mart distribution center to the Wal-Mart pharmacy in Carencro,

---

[69]     Rec. Doc. 49-4 at 2-3.

Louisiana and then to Mr. Trosclair.   Thus, INL's contacts with Louisiana are directly linked to the plaintiffs' claims.

The first two prongs of the analysis being satisfied, a presumption arises that Louisiana's exercise of jurisdiction over INL would be fair and reasonable, and the burden shifts to INL to defeat specific personal jurisdiction by showing that Louisiana's exercise of jurisdiction would be unfair or unreasonable.  The factors to be analyzed are (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.  INL gave short shrift to these factors in its briefing, primarily relying on its contention that it had insufficient contacts with Louisiana to satisfy the first two prongs of the analysis. Upon examination of these factors, however, this Court concludes that litigation of this claim in Louisiana would not constitute an undue burden on INL.  The contracts between INL and Wal-Mart indicate that INL is a large enough company that it was able to supply Wal-Mart's packaging needs for the nationwide distribution of at least two medications, Simvastatin and Clopidogrel.  The allegedly mislabeled lot of Clopidogrel was so large that it was shipped to five distribution centers[70] and

---

[70]     Rec. Docs. 52-3; 52-4 at 2.

consisted of thousands of doses of medication.[71]  Therefore, INL has the resources to overcome any burden of litigating in Louisiana rather than in Florida where it has its principal place of business.  Louisiana has a strong interest in seeing that its resident, who was allegedly harmed in the state, is able to pursue his claims here regarding activities by a company that directed its activities to this state.  The plaintiffs have a strong interest in obtaining relief in their home state.  The interest of the interstate judicial system in the efficient administration of justice, and the shared interest of the several states in furthering fundamental social policies would also be best served by litigating this matter in Louisiana where the plaintiff resides, the prescribing pharmacist is located, the plaintiff's health care providers are located, and where INL knew that it could be required to litigate when it entered into contracts with Wal-Mart for nationwide distribution of the product that it packaged. Like the courts in the Eastern District of Louisiana and in Kootenai County, Idaho, this Court concludes that it would not be unfair or unreasonable to exercise specific personal jurisdiction over INL with regard to its placing into the stream of commerce prescription medications that were allegedly mislabeled and allegedly caused injury in this state.

---

[71]    Rec. Doc. 52-5.

## **Conclusion**

For the foregoing reasons, this Court finds that the nonmoving parties, John Trosclair, Tonia Trosclair, and Wal-Mart Louisiana, LLC, have established a *prima facie* case of specific personal jurisdiction as to defendant International Laboratories, LLC. Accordingly, this Court recommends that defendant International Laboratories, LLC's motion to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[72]

Signed at Lafayette, Louisiana, this 20th day of July 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[72] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).